First case this morning is U.S. v. Williams, 18-1299, and we'll hear from Mr. Lee. Good morning, your honors, and may it please the court. In this case, border agents searched the contents of Mr. Williams' laptop after he arrived at Denver International Airport from an overseas flight. Now, that would have been fine if the border agents had either secured a warrant or developed reasonable suspicion that the search would turn up contraband. They didn't have either of those things, and so the search violated the Fourth Amendment. Now, before getting too far into what border agents can't do, I want to emphasize what they can do. Under the routine border search exception, they can always detain an international traveler for investigation, question the international traveler, search his person, and search his luggage. And they don't need reasonable suspicion? You do not, no. You can always do that without any sort of suspicion at all. So they could search his notebook, his papers? Absolutely, absolutely. It's only when the search is especially intrusive that reasonable suspicion is required. And the courts have recognized that for a number of different searches, such as the search of a private cabin on a cruise ship or a strip search. And that's important because the Supreme Court's 2014 decision in Riley v. California indicates that the search of a personal electronic device is an especially intrusive search. Riley was not a border search, was it? No, it was not. Riley was a search incident to arrest case. But as both the Fourth and the Ninth Circuits have recognized, its reasoning bears in important ways on the scope of the border search exception. Because personal electronic devices contain an immense amount of information, and information that's particularly sensitive, and that's what Riley says, they're entitled to heightened Fourth Amendment protections. And that makes them an especially intrusive search akin to the search of a private cabin or a strip search. What if I had a briefcase full of sensitive documents and it was locked? If you had a briefcase full of sensitive documents that are locked? Right. Yeah, they would be able to search that. Personal electronic devices are fundamentally different. Let me change it a little bit. What if I had a briefcase full of flash drives and my briefcase was locked? Flash drives. I don't know the answer to that. I think that that would be an in-between case, really. Because flash drives presumably wouldn't contain e-mails, text messages, location information. Let me put on my hypothetical that the flash drives are backups of all my personal computers. Yeah, I honestly don't know the answer to that. I think that the only rule you need to adopt here today is what the Colsus Court from the Fourth Circuit and the Ninth Circuit and Katterman and Cano have held, which is that cell phones and laptops are different. And I think that you could draw the line there. You could draw the line at personal electronic devices. A flash drive, probably not a personal electronic device in the same way. Wasn't there an external hard drive that was part of this case? I don't think so, no. Maybe I read that in one of the cases that's cited. So, no. What they did, it was an internal hard drive, and border agents disassembled the internal hard drive and connected it to specialized forensic equipment, used that to bypass the password and the operating system, pulled all of the data, and copied it onto a government-owned hard drive. Are you suggesting this was an extended border search? I think it was an extended border search. It was not an extended border search. What's that? It was not an extended border search. He never got the computer into the country, if you will. Well, I think the main point is that, yes, some courts have said reasonable suspicion is required for an extended border search. But what I've argued is that this is an especially intrusive search and that that's the reason that reasonable suspicion was required. What about the other cases from the other circuits that have concluded that this shouldn't be treated any differently than a regular border search? So there's only one case, and that's from the 11th Circuit, and it's just wrong. There's also one from the 6th Circuit. I have not seen one other than from the 11th Circuit that says that a forensic search of a personal electronic device. But regardless, that rule is wrong, and the reason is that it fails to take into account Riley's holding that personal electronic devices are fundamentally different from other forms of property. And it also fails to take into account that the Fourth Amendment is always supposed to balance the government's interests against the individual's privacy interests. And the 11th Circuit's decision in TwoSet doesn't give any weight at all to the uniquely grave privacy interests in personal electronic devices. It's also important to this case that the Fourth and the Ninth Circuits have recognized rightly that reasonable suspicion in general of ordinary criminal activity is not enough to justify an especially intrusive border search. What's needed is reasonable suspicion that the especially intrusive search is going to turn up contraband. And the reason for that is the purpose of the border search exception is to intercept and block inadmissible people and property from entering the country. Mr. Lee, let me ask you about that. Let's assume, arguendo, that you're 100% correct about that. Mr. Williams was, at the time, the officer knew that he had been in Germany and he had contraband in Germany, the air gun and the bow and arrow, which was, by definition under German law, contraband. He knew that he, Mr. Williams, was evasive, and I think you acknowledged that in your briefing, when confronted about whether he was in Germany. And so you put those together with a very low standard that reasonable suspicion entails, and you view the evidence in the light most favorable to the ruling, which here was to deny the motion to suppress. So why couldn't, viewing the evidence in the light most favorable in favor of the ruling, one reasonably infer that the agent did have reasonable suspicion to believe that if he were willing to bring contraband into Germany, that he might also be willing to bring contraband into the United States, particularly when he was so evasive and he had obviously been illegally in the country of Germany, Morocco and the like. Two fundamental responses to that. First, my understanding of the record is that the bow and arrow and air gun were not contraband. It was illegal to use them in a public place, and he used them in a public place. Weren't they worried, though, that the concern was that this guy had done several things that were sort of odd, and to be on the lookout for him because they didn't know what he was going to do? I think that that's right, and that is not enough to justify a border search because what they needed was not reasonable suspicion that he was up to no good, reasonable suspicion that he was smuggling. Now another thing I want to say in response to Judge Baccarat is that the problem with that theory is that they searched his person and they searched all of the luggage and they found nothing, nothing at all suspicious. So if the notion is maybe he's going to smuggle weapons, even though he had no history at all of smuggling weapons across the border, they searched all of his property. Okay, well that goes to the duration of the actual search, which you all separately challenge, but under a completely distinct theory, and that is that they detained his laptop for a week, and because of the Thanksgiving holiday there could have been other officers if the officer wanted to take off the Friday after Thanksgiving and the like, but I didn't see anywhere in your briefing that you had argued either of the two points that you just mentioned. One is that it wasn't contraband in Germany. It was the fact that he had illegally used the weapons that he could legally possess in Germany, which was the first point you mentioned, and then the second point that even if it were contraband and they could have suspected that he was bringing contraband into the United States, they could have alleviated themselves of that suspicion once they searched his person and his baggage. I'd argue that. I did argue that. Where did you argue that? I'd have to go back and look at it, but I did say in my brief, I think several times, that it was critical that they had searched his person and searched his luggage and it turned up nothing. And the only relevance of that would be on your last appeal point, which was the extent and duration of the actual detention. No, that's not. Why would that? I'm not trying to argue with you, but maybe I am. Reasonable suspicion is either black or white. I mean, you either got it or you don't, right? No, reasonable suspicion takes into account the totality of the facts that law enforcement knew at the time they conducted the search, and at the time law enforcement initiated the search, they knew that they had searched his person and searched his luggage and not found anything. So, no, my argument is that if they had searched his laptop using the forensic equipment and forensic software at the airport, that would not have been supported by reasonable suspicion because the totality of the facts known to law enforcement at the time did not support reasonable suspicion. Thank you. Do these customs agents have the authority to perform a national security function as well? I mean, you're talking about blocking contraband and blocking inadmissible people. What about people they think might be admissible but might be a threat to the United States? So they have an important function of blocking foreign terrorists from entering the United States. I mean, they can't block an American terrorist? They come in and they have a BOLO on them? An American has an absolute right to enter the country, which is not to say they can't investigate a U.S. citizen for terrorism. They can do that. They can use all of the investigative techniques that they use to disrupt terrorism in the interior. The point is that investigating a U.S. citizen for terrorism is an ordinary law enforcement function, and you can see that because the government's interest in investigating Mr. Williams for terrorism didn't depend on whether he arrived from New York or Paris. Do they have arrest powers, the customs agents? As far as I know, they do. What if they saw this person assaulting someone in the customs line? Could they arrest them? Absolutely. And that doesn't relate to the function of whether they're admissible or whether they're bringing in contraband? No, the Constitution does not restrict border agents from performing ordinary law enforcement functions. All it says is that if border agents are performing an ordinary law enforcement function, they have to follow ordinary Fourth Amendment rules. It's only when they are seeking to block contraband or inadmissible people that they can rely on this specific exception for border searches. Otherwise, Congress and the executive can have border agents do any sort of law enforcement function that they want, but when they do it, they just have to follow ordinary law enforcement rules. And with the Court's permission, I'll reserve the remainder of my time for rebuttal. All right, Ms. Miller? May it please the Court. I'm Marissa Miller, and I represent the United States. Today's case raises a number of difficult questions about the Fourth Amendment's application to technology at the border. But this Court doesn't need to resolve any of those difficult questions today. There's really only one question it needs to focus on. Was there reasonable suspicion to search this defendant's laptop after he lied to border officials about the countries he'd visited while he was abroad, and in doing so, committed a federal crime? Well, are you talking about 18 U.S.C. 1001? Yes. How do you deal with Mr. Lee's argument that under Ramsey, the reasonable suspicion has to pertain to the reason for the limitation on the Fourth Amendment? I think there is a strong tie, actually, between lying to customs officials and the possibility that someone is committing a violation of customs law. When a person is willing to lie to border officials, and again, that's committing a crime, it becomes reasonable to suspect that that person is doing it because they're trying to commit a border crime. So I'm walking down the street. An officer says, you know, where are you going? And I'm actually going to the hotel. And I say, you know, I'm going down to the park. And I'm lying. And let's just say, hypothetically, I don't know how, but this officer is completely brilliant, and he knows that I'm lying. So he has reasonable suspicion to search me? I mean, I think in this context, you're allowed to look at the facts of the crime that we have reasonable suspicion of, and I think it's not just the lying to the federal officer. It's what officer you're lying to and where you're doing it. It's not just the sole act of lying. He lies. He's questioned about it. And he's extremely evasive. He's very deceptive. And all of this is taking place at the border. There's really only so many reasons that you would lie to a customs official, and probably the most likely explanation is that you're trying to smuggle something into the country. So based on that, we did have the required reasonable suspicion to search not only the defendant, but also everything he was attempting to bring into the country. I mean, do you agree with the defense counsel that the reasonable suspicion has to be related to whether you're trying to bring in contraband or whether someone's inadmissible? I think that the defense defines, I guess, what the reasonable suspicion has to relate to far too narrowly. I will say that even under that definition, I think we succeed for the reasons I just laid out. But I think the border exception is broad enough to encompass the national security interests of the country. It's a silly analogy, but I like to think of it as the security guard at the football stadium. He's not just there to check and see if you have a ticket or if you're bringing something illegal in. He's also looking out for threats to the entire enterprise. So I think the national security aspect has to come in. But if I understand your answer to Judge Carson's question, you're not disagreeing with the notion that the reasonable suspicion can't relate broadly to criminality. You're saying that under Ramsey, the national security interest would fall within the domain that Mr. Lee is talking about, that he is restricting the exception to, correct? That's correct. I do believe the reasonable suspicion has to have at least some tie to border crimes and obviously the purpose underlying the exception itself. They don't have to ignore child pornography if they find it while they're looking for it. Absolutely not. And I mean, in this case, again, the reasonable suspicion was that this guy might have contraband. And the fact that we found a different kind of contraband than perhaps we expected to doesn't really alter the analysis. Is it contraband only or were they concerned that he'd just come from Paris where they had a terrorist attack on top of the whole everything else? I think it was a combination of those factors. I think when Mr. Williams originally arrived at the airport,  and the arrest in Germany. But I think as time went on, the focus was really more, why is this guy still lying to us? Why won't he tell us what he did in Germany? And I think under the border exception, the government does have the discretion to investigate individuals who are acting suspicious at the border, even if we don't know precisely why they're acting suspicious. Criminals don't wear signs that say, I'm carrying child contraband, child pornography. We have to look for subtle clues and we want these officers to be able to rely on their training and their expertise to detect those clues. Terrorism and the depletion of terrorism, did that contribute to the reasonable suspicion? I think so, yes. That he was in Morocco and Germany, that's really all there was, right? I guess I would add to that. And again, obviously, reasonable suspicion, it's totality of the circumstances. So really, we're looking at everything in the salad bowl. But it's not just that he divided his time between Morocco, Belgium, and France, the three countries that were intimately tied to this attack. He's flying back from Paris on a one-way ticket just days after the attack happens. And then in the interview with the agents, they ask him about his time in Brussels, and he starts telling them this story about staying with a friend, named Mohammed, who he met near a mosque. But when the agents try to get more information, he can't remember his friend's last name, he can't remember really anything else. And I think, again, that both goes to this possibility that something is going on, but also, why is this man being so evasive? What is he trying to hide from us? Another, I think, important part of... What if he had just said, I'm not talking? They started questioning him about where he'd been and everything. You said, you know what, I don't have anything to say to you. He would certainly be in a much better position than he is in this case. I think the lies, his own statements, his own behavior makes up a significant part of what contributes to reasonable suspicion. If I could go back in time and I were his attorney, I would perhaps advise him not to lie and maybe not to say these things. I mean, he does have an obligation to comply with these customs officers. But, yes, no, his own statements strongly contributed to what happened here. Well, let me probe that a little bit. He really didn't lie. I mean, he didn't say I was non-observant. He just was... He is... He said he was really, really, really evasive, but he didn't affirmatively lie. I... This is a semantic debate, but yes. I mean, I think we could definitely... No, if under the Fifth Amendment you've got a right to remain silent and you can't draw incriminating inferences from your invocation of the right to silence, that's essentially what he did. I think the fact... The fact that the form asked what countries he'd been to and then he didn't list a country he'd been to and then he swore that those responses were truthful and signed his name, I think that... That... I think that gets you, I mean, to the line of, I guess, falsehood or at least extreme attempts to deceive. And, I mean, that almost makes it more suspicious. We, you know... In my brief, I include a transcript of the audio interview, and this is a man who was desperately trying not to answer the agent's questions. If this had been a simple mistake, he certainly could have explained that to the agents. Oh, I forgot I was in Germany. I was in a bunch of countries. So what would have happened if he would have landed and said, you know what, I'm not filling out your form? I think customs would have the right to deny him entry. Entry. I'm not 100% positive. I'm just asking you because it made me think about the lie by omission or whether it was a lie at all. I mean, certainly, if you don't make those disclosures, you don't get to come in. Right. I mean, it's a... That's part of the border search exception, is that there are certain trade-offs. We have to let the government search our stuff so that we can come in. And we have to answer their questions, too. And I think that does go to the important point here that, of course, this search occurred at the border, where the government's interests were at their zenith, and an individual's expectations of privacy were quite low. I know this is an obvious point, but I really think it is impossible to emphasize it enough because when it comes to the Fourth Amendment, the border is just a completely different world. When we're inside the country, it would be a clear violation of the Fourth Amendment for a police officer to walk up to you and, without any suspicion, start patting you down, demand a look inside your briefcase, conduct a thorough search of your car. And that's what happens all the time at the border. And when we're inside the country, the default for one of these searches is probable cause and a warrant. And when we're at the border, the Supreme Court has never even come close to requiring either a warrant or probable cause. And I think that's important because, in this case, we really can't rely on our legal intuitions about what does and doesn't violate the Fourth Amendment because the rules here are so different. Things that are obviously unconstitutional when we're inside the country and we're on a public street become perfectly reasonable at the border simply by virtue of that unique location. I would like to turn to the good-faith argument briefly because I think that's another ground on which this court could decide this case and perhaps avoid some of the thornier constitutional questions. Under the good-faith exception, suppression is really only warranted when officers exhibit a deliberate or reckless or grossly negligent disregard for the Fourth Amendment. But suppression isn't justified when those officers act with what's an objectively reasonable good-faith belief that their conduct was lawful. Well, they have to actually not just have a reasonable good-faith belief. For example, if there's an absence of authority, they have to affirmatively rely on some either precedent, statute, or regulation, right? That's correct. And I think, in this case, the officers relied on all three. I think that the case law in this circuit indicated at least that it was an objectively reasonable interpretation of those cases that this is a kind of personal belonging, just like all of the other kinds of things we find in suitcases, that these officers can search all the time. So what's your case for that? I mean, your Tenth Circuit case that you think props that up. I would say we're really relying on Supreme Court precedent alone here, so it would be Montoya de Hernandez and Flores-Montano. Okay, so in those two cases, best-case scenario for the government is that you know from the second case that you mentioned that if he were in a vehicle, then that would be okay. Problem for you is he wasn't in a vehicle, so there was really no reason to rely on that precedent. And on the first case, we know that if it was a non-routine search, there would be a requirement for reasonable suspicion, and obviously the fact that our circuit hasn't weighed in on it, there's a split with Toussaint versus the Ninth Circuit and the Fourth Circuit, so there's really no reason that the officer would have said, oh, based on these two precedents, they are so clear that we can affirmatively rely on these two Supreme Court precedents. I think that gets to an important point, because when you read United States v. Davis and you read all of the court's recent statements on the exclusionary rule, we can see that this idea that you need a clear precedent specifically authorizing what the police did is just irreconcilable with everything they've told us about the exclusionary rule. In Davis, the court says this isn't a strict liability regime. We don't punish the officers with exclusion every time they get the law wrong. There is a mental requirement. We're looking at culpability, and I think especially in a case like this, suppressing this evidence would be essentially asking the officers to guess the future course of the law based on Riley, which really has nothing to do with the border search exception, and the fact that they guessed it wrong is what would lead us to suppression, and that just goes against what the court has said about suppression being a last resort. So if there's a circuit split and no precedent on point, the good faith Leon would insulate anything the officers do if they rely on one branch of that circuit split. Yes, that's correct, and I think that is the import of Davis. I think that I guess we could imagine a scenario where even if the circuits had split, maybe one of the precedents was just so obviously incorrect that we'd still think it wasn't objectively reasonable. But when the appellate courts and the advocates are still having this debate, it just seems unreasonable to expect that the officers came to the right answer. And again, we're looking at deterrence effect, right? You can't deter someone unless they really knew or should have known that what they were doing was wrong, and there are substantial costs to suppressing the evidence here. If the court has no further questions, I will cede the remainder of my time. Thank you. Thank you. All right, Mr. Lee. Counsel, would you agree that if they had had the right devices at the border and they could have plugged it into it and checked that computer quickly, that there wouldn't be this, you know, your issue? No, because by... Suppose there was a bomb-making formula on the hard drive and a place where he was going to get sources of supplies. You say they couldn't do that reasonably? In that situation, they could rely on the exigent circumstances exception. Well, it's not a bomb. It's just to tell them how to do it. So this guy may be a terrorist. Now, you're not going to require reasonable suspicion in that situation at the border. If it's digital contraband, like the information about how to make a bomb is digital contraband, they can search that. If they know... And in the course of that quick search, they picked up the child pornography. They're not going to close their eyes to that, are they? If they are conducting a legitimate border search... Which would be what, in your opinion, with respect to a laptop or an iPhone? Which would be either a warrant based on probable cause or reasonable suspicion that the search is going to turn up contraband that they need to block? I do want to say one thing quickly. My friend said that you don't need binding precedent that specifically authorizes for a good faith exception. Davis at 240 says binding precedent must specifically authorize a particular police practice. Border searches have been unlimited for 100 years. That's precedent to me. By the time of the search, there was Riley and Cotterman that put a reasonable officer on notice that personal electronic devices were distinguishable. So the court should reverse. Thank you, counsel. This matter will be submitted. Both sides, in your respective briefing and argument, did an excellent job. We appreciate both counsel's hard work.